BRADLEY, Presiding Judge.
These appeals arise out of the consolidation of two taxpayer refund requests in which the Department of Revenue (the Department) interpreted a new tax exemption statute.
Taxpayers, the Baptist Medical Centers (Baptist) and Mobile Infirmary Association *46 (Mobile), requested from the Department refunds from the two hospitals’ payments of sales taxes on drug purchases. Both requests were made pursuant to 1981 Ala. Acts, No. 81-663, which has been codified at section 40-23-4.1, Code 1975. That stab ute, hereinafter referred to as the Exemption Statute, provides:
“(a) The term ‘drugs’ shall include any medicine prescribed by physicians when the prescription is filled by a licensed pharmacist, or sold to the patient by the physician, for human consumption or intake.
“(b) In addition to any and all items exempt from gross sales tax, certain drugs, as defined in subsection (a) of this section, shall be exempt from state gross sales taxes as defined in section 40-23-2.”
§ 40-23-4.1, Code 1975.
Mobile’s refund petition was initially denied by the Chief Administrative Law Judge, but his decision was reversed by the Mobile County Circuit Court. Baptist’s refund petition, however, was denied by the Jefferson County Circuit Court. In denying Baptist’s petition, the court decreed that the Exemption Statute did not entitle Baptist to a sales and use tax exemption on its purchases of prescription drugs.
The pertinent facts from which taxpayers’ refund requests arise are as follows. As a part of their hospital patient care, both taxpayers dispense drugs through their hospital pharmacies. The drugs are purchased through taxpayers’ respective suppliers, and both Baptist and Mobile pay sales taxes on the drugs. Taxpayers assert that the drugs dispensed through their pharmacies fit the statutory definition of “drugs” and that, as a result, they are entitled to a sales and use tax exemption. The Department contends the statute does not exempt drugs as dispensed through the hospital pharmacies.
We disagree with the Department.
The facts of this case are agreed upon by the parties. Thus, the only dispute concerns whether the Exemption Statute entitles taxpayers to a sales and use tax refund. In short, we must determine the proper application of the law to the facts. Burton Manufacturing Co. v. State, 469 So.2d 620 (Ala.Civ.App.1985).
At the outset, we note that this statute has a particularly interesting legislative history. After its enactment, the legislature issued two different resolutions which purported to amend section 40-23-4.1, Code 1975. A statute simply cannot be amended by the legislature’s passage of a joint resolution. In re Opinion of the Justices, 381 So.2d 183 (Ala.1980). Consequently, the two resolutions have no bearing on our interpretation of the statute.
In cases such as this, requiring statutory interpretation, we must determine the legislature’s intent behind the statute and safeguard its accomplishment. Wright v. Turner, 351 So.2d 1 (Ala.1977). Specific areas of inquiry include an examination of conditions that may occur pursuant to the statute and the effects of our giving the statutory language one interpretation as opposed to another. Wright, supra.
Specifically, exemption statutes such as this one must be construed against the taxpayer. State v. Advertiser Co., 257 Ala. 423, 59 So.2d 576 (1952). The statutory construction attached to the clauses, however, should not be so strict that the purpose and intent of the exemption is defeated. State v. Advertiser, supra. In short, when an act reflects a legislative intent to exempt particular property from taxation, we may not defeat the exemption by construction. State v. Advertiser, supra.
We have examined this statute and find that the legislature intended to create an item exemption for drugs meeting the definition set forth in section 40-23-4.1, Code 1975. We agree with taxpayers that there are four basic component parts to the definition: (1) any medicine (2) prescribed by a physician (3) when the prescription is filled by a licensed pharmacist or sold to the patient by the physician (4) for human consumption or intake. The drugs dispensed through taxpayers’ pharmacies clearly fit this definition, as they are (1) medicines, (2) prescribed by physicians, (3) filled by the hospital’s licensed pharmacist, (4) for hu *47 man intake. In light of this definition, we cannot find that the drugs dispensed by taxpayers are not entitled to the exemption.
In our attempt to ascertain the legislature’s intent behind the statute, we note the effect of giving the statute a contrary interpretation and denying the exemption. Wright, supra. A denial would create this scenario. Sick persons requiring hospitalization and having prescriptions filled through a hospital pharmacy would ultimately face higher prescription drug costs than sick persons recovering at home and purchasing drugs through an independent pharmacy. This higher cost would result from the hospital’s passing on an increased drug cost due to its required payment of sales tax. We cannot find that the legislature intended such a result.
We reject the Department’s argument that State v. Tri-State Pharmaceutical, 371 So.2d 910 (Ala.Civ.App.), cert. denied, 371 So.2d 914 (Ala.1979), operates to deny taxpayers the exemption. In Tri-State, this court held that hospitals were primarily in the business of providing services, not selling drugs, and that any drugs given to hospital patients were merely an integral part of the services provided. Consequently, the sales of drugs to hospitals by manufacturers were retail sales requiring the collection of sales tax. Tri-State.
Unlike Tri-State, this case involves the application of a statutory exemption. Where the legislature has clearly provided for the exemption of certain items from tax, we may not defeat the exemption by construction. State v. Advertiser, supra. Because we find the drugs dispensed through taxpayer’s pharmacies within the statutory definition, Tri-State does not operate to deny the exemption.
Additionally, we note that at the time of Tri-State, this exemption statute did not exist. This court was not concerned in Tri-State, with the application and interpretation of a legislative exemption but, rather, with a determination of where the tax burden should fall. Consequently, our interpretation of the Exemption Statute and our extension of the tax break to hospi-tais does not alter the integrity of the Tri-State decision.
The Department further argues that the use of the word “when” in the Exemption Statute indicates that the exemption applies at a specific time, that time being “when the prescription is filled by a licensed pharmacist, or sold to the patient by the physician.” § 40-23-4.1, Code 1975 (emphasis added). The Department maintains that the taxable event in the hospital’s situation has already occurred “when the prescription is filled by a licensed pharmacist, or sold to the patient by the physician.” § 40-23-4.1, Code 1975 (emphasis added).
Taxation, according to the Department, must occur when the hospital purchases the drug from its supplier, and as this event does not coincide with the filling of the prescription or the selling of the drug to the patient, the Department maintains the exemption is not applicable. We disagree with the significance the Department attaches to the word “when” as it is used in the statute.
We opine that the legislature did not, by the use of the word “when,” intend to create an exemption triggered solely by time. Instead, we find that the Exemption Statute expresses an intent to exempt certain items. We recognize that:
“Apt words are not always used, and perspicuity and precision are not always observed, by those who draft statutes. The whole statute under construction, as well as others, must sometimes be looked to, to ascertain the true meaning and intent.”
City of Birmingham v. Southern Express Co., 164 Ala. 529, 51 So. 159 (1909) (citations omitted).
We find that a comparison between this statute and an earlier, similar statute supports our interpretation of the statute. The comparison bolsters our conclusion that the legislature did not create a time exemption, but simply that “when” was not the most “apt” nor the most precise term that could have been chosen to effectuate legislative intent. Prior to the enactment *48 of section 40-23-4.1, Code 1975, this exemption was in effect:
“The gross proceeds of the sale or sales of all medicines prescribed by physicians for persons who are 65 years of age or older, and when said prescriptions are filled by licensed pharmacists, shall be exempted_ The exemption provided in this section shall not apply to any medicine purchased in any manner other than as is herein provided.”
§ 40-23-4(a)(30), Code 1975.
Two stark differences are apparent when one compares the two exemptions. Not only does the Exemption Statute remove the age limitation from section 40-23-4(a)(30), Code 1975, but it also removes this limiting language: “The exemption provided in this section shall not apply to any medicine purchased in any manner other than as is herein provided.” It is our opinion that the absence of this language in the Exemption Statute is indicative of legislative intent to expand the previous exemption to all persons (not just those 65 or older) and to hospital pharmacies like Baptist and Mobile.
Finally, we would attach more weight to the legislature’s plain language extending the exemption to medicines “for human consumption or intake.” § 40-23-4.1, Code 1975. Thus, simply because patients are provided their medicines through a hospital pharmacy, we cannot find legislative intent to deny the exemption. We admit that the tax break in this situation immediately flows to the hospital. However, absent the exemption, higher drug costs are passed on to the patient. Drugs prescribed and filled by the hospital pharmacy and then administered to patients are drugs “for human consumption or intake.” Consequently, we find the exemption applicable.
The judgment of the Jefferson County Circuit Court is reversed and the cause remanded for entry of judgment not inconsistent with this opinion, and the judgment of the Mobile County Circuit Court is af-. firmed.
REVERSED AND REMANDED AS TO CIV. 6031.
AFFIRMED AS TO CIV. 6004.
INGRAM, J., concurs.
HOLMES, J., dissents.