The United States Court of Appeals for the Eleventh Circuit has certified to this Court questions regarding the interpretation of Alabama laws regulating companies that offer health care benefits and regarding whether certain laws designed to protect a patient's right to select his or her doctor, dentist, or pharmacist apply to a company like Blue Cross and Blue Shield of Alabama, Inc. ("Blue Cross"), which is organized under the provisions of a specific state statute. The specific questions certified are as follows:
 "Is Blue Cross and Blue Shield of Alabama exempted by § 10-4-115 and § 27-1-4, [Ala. Code 1975,] from the application of § 27-1-19, §§ 27-19A-1 to -11, and §§ 27-45-1 to -9?
 "If the answer to the first question is in the affirmative as to any of those three acts, are § 10-4-115 and § 27-1-4 invalid under the Alabama Constitution to that extent?"
 I.
The facts, as provided by the Court of Appeals, are as follows (the Court of Appeals certification to this Court is published; see Blue Cross Blue Shield of Alabama, Inc.,116 F.3d 1406, 1408-09 (11th Cir. 1997)):
 "Blue Cross is a not-for-profit corporation organized and existing under Alabama Code §§ 10-4-100 to -115 for the purpose of providing health care service plans to subscribers.[1] It furnishes health benefits to approximately 2.2 million people in Alabama,[2] which is more than half of the state's population.[3]
 "In order to contain or reduce the cost of providing health care benefits to subscribers, Blue Cross enters into contracts with various health care providers. Providers that have contracts with Blue Cross are known as 'network providers.' Network providers usually agree to perform services for Blue Cross subscribers at discounted rates, and they agree to submit to [Blue Cross's] quality review, dispute resolution, and cost containment procedures.
 "In its health plans, Blue Cross reserves the right not to honor assignments of benefits. It also reserves the right to choose to pay either the provider or the subscriber, when a subscriber receives medical services from a non-network provider. However, *Page 295 
if a claim is received from a network provider for services to a subscriber who has network benefits, Blue Cross will pay benefits directly to the network provider. Blue Cross guarantees that network providers will be paid for their services within a specified period of time; no such guarantee is made to other providers.
 "The Alabama Legislature has forbidden many of the 'managed care' practices that Blue Cross employs, at least when they are utilized by other insurance companies. For instance, in 1984, the Legislature enacted the Dental Care Services Act (the Dental Act). See 1984 Ala. Acts [Act No. 411]. That act prohibits health plans and health insurance policies from denying any dentist's request to become a network provider so long as the dentist is practicing within the scope of his or her license. See Ala. Code § 27-19A-3(2) (Supp. 1996). The Dental Act also prohibits a health plan from limiting the patient's selection of a dentist and from reviewing the necessity or quality of any service performed by a dentist. See
Ala. Code § 27-19A-3(1), (3) (Supp. 1996). It declares void all terms of plans inconsistent with the Act and criminalizes willful violations of it. See Ala. Code §§ 27-19A-5, -8 (Supp. 1996).
 "The Pharmaceutical Insurance Coverage Act (the Pharmacy Act), enacted in 1988, see 1988 Ala. Acts [Act No. 379], prohibits health plans from denying a pharmacist's request to become a provider member of the health plan, so long as the pharmacist is properly licensed. See Ala. Code § 27-45-3(2) (Supp. 1996). It also prohibits health plans from limiting a patient's selection of a pharmacist. See
Ala. Code § 27-45-3(1) (Supp. 1996).
 "The Assignment Act, enacted in 1994, see 1994 Ala. Acts [Act No. 638], requires all entities providing health insurance or health benefit plans to reimburse, within a specified time period, all health care providers for their performance of covered services. See Ala. Code § 27-1-19(a) (Supp. 1996). The Assignment Act also requires insurers or other entities providing health care plans to honor all assignments of benefits, notwithstanding any terms of the insurance or health plans to the contrary. See
Ala. Code § 27-1-19(d) (Supp. 1996). Health care providers, as assignees, are provided a right to sue to collect the assigned payment. See id.
 "We will refer to the Dental Act, the Pharmacy Act, and the Assignment Act collectively as 'the Alabama Provider Acts.'
". . . .
 "Blue Cross filed this action, seeking declarations that the Assignment Act is preempted by ERISA insofar as it relates to ERISA-governed plans, and that because of Alabama Code § 10-4-115
and § 27-1-4, Blue Cross is not bound by the Assignment Act. Blue Cross also sought to permanently enjoin the enforcement of the Assignment Act against it and its employee welfare benefit plan sponsors. Blue Cross named John O. Nielsen, D.M.D., a licensed dentist practicing in Alabama, as a defendant. Blue Cross sued Nielsen both individually and as the representative of a class of all health care providers who have claimed or may claim in the future rights under the Assignment Act.
 "Kenneth O. Friday, a licensed Alabama dentist, and George R. Bolling, a licensed Alabama pharmacist, filed a motion to intervene in this case as defendants and as class representatives. After the district court granted that motion, Friday and Bolling counterclaimed against Blue Cross for damages arising out of [Blue Cross's] alleged violation of the Dental Act and the Pharmacy Act. Friday and Bolling also sought an injunction to prevent Blue Cross from excluding them from participating as network providers in Blue Cross health benefit plans.
 "Blue Cross filed a motion for summary judgment on its complaint and Friday and Bolling's counterclaims. The district court certified three defendant classes for the purposes of deciding [Blue Cross's] motion and then granted summary judgment to Blue Cross on the first two counts of its complaint and on the intervenors' complaint. The court held that ERISA preempts the Alabama Provider Acts insofar as they relate to ERISA plans. It also held that § 10-4-115 and § 27-1-4 of the *Page 296 
Alabama Code exempt all Blue Cross plans from the applicability of the Alabama Provider Acts, anyway. Finally, the court rejected the defendants' argument that the exempting statutes violate the Alabama Constitution.
 "The defendants, whom we will refer to . . . as 'the providers,' timely appealed the district court's grant of summary judgment in favor of Blue Cross.
Blue Cross Blue Shield of Alabama v. Nielsen, 116 F.3d 1406,1408-09 (11th Cir. 1997).
 II.
The first question presented could be restated as follows: Did the Legislature, when it adopted acts permitting patients to choose their medical-services providers, intend to exempt Blue Cross from the coverage of those acts? We conclude that Blue Cross is exempted, by the provisions of §§ 10-4-115 and27-1-4, Ala. Code 1975, from the coverage of what the Court of Appeals has referred to as the Alabama Provider Acts. Section10-4-115 (1994 repl. vol.), provides:
 "No statute in this state applying to insurance companies shall be applicable to any corporation organized under the provisions of this article and amendments thereto or to any contract made by such corporation unless expressly mentioned in this article and made applicable; except, that such corporation shall be subject to the provisions regarding annual premium tax to be paid by insurers on insurance premiums."
Section 27-1-4, Ala. Code 1975 (1986 repl. vol.), a portion of Title 27 (which constitutes the "Alabama Insurance Code" and in which the Alabama Provider Acts appear), states:
"This title shall not apply as to:
". . . .
 "(2) Nonprofit corporations for establishment of hospitalization plan under section 10-4-100 et seq., except to the extent now or hereafter provided in such laws. . . ."
To decide whether § 10-4-115 and § 27-1-4 exempt Blue Cross from the Alabama Provider Acts, we must examine the legislative intent behind these statutes. In discussing statutory construction this Court has stated:
 "[When a court] is called upon to construe a statute, the fundamental rule is that the court has a duty to ascertain and effectuate legislative intent expressed in the statute, which may be gleaned from the language used, the reason and necessity for the act, and the purpose sought to be obtained."
Ex parte Holladay, 466 So.2d 956, 960 (Ala. 1985). In IMEDCorp. v. Systems Engineering Assocs. Corp., 602 So.2d 344, 346
(Ala. 1992), this Court further stated with regard to statutory construction:
 "Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect."
Based upon our reading of these two Code provisions, and applying the principles of statutory construction heretofore adopted by this Court, we conclude that the language of §10-4-115 plainly and unambiguously states that corporations formed under § 10-4-110 et seq., as Blue Cross was, are not regulated by the insurance laws of this State unless § 10-4-110
et seq. are expressly amended to apply such laws. This interpretation is also supported by the wording of § 27-1-4, which *Page 297 
expressly states that laws appearing in the Alabama Insurance Code (Title 27) do not apply to companies, like Blue Cross, that are organized under the provisions of § 10-4-100, unless §10-4-100 et seq. expressly provide that such laws apply.
It is a familiar principle of statutory interpretation that the Legislature, in enacting new legislation, is presumed to know the existing law. See Ex parte Louisville N.R.R.,398 So.2d 291, 296 (Ala. 1981). Applying that principle to this case, we can presume that if the Legislature had intended for §27-1-19 and §§ 27-19A-1-to -11, and §§ 27-45-1 to -9 to apply to companies like Blue Cross, it could have eliminated any question by expressly amending § 10-4-100 et seq. to specify that those statutes would, in fact, apply. Based on the foregoing, we conclude that Blue Cross is exempted from the Alabama Provider Acts by the provisions of § 10-4-115 and §27-1-4. The Court of Appeals' first question is answered in the affirmative.
 III.
Having answered the first question in the affirmative, we must now determine whether the exemption granted by § 10-4-115
and § 27-1-4 to Blue Cross and to others similarly situated, violates provisions of the Alabama Constitution, as claimed by those parties the Court of Appeals refers to as "the providers."
The providers contend first that these sections violate the Alabama Constitution because, they argue, § 10-1-115 imposes an additional requirement for the enactment of legislation and that requirement conflicts with the legislative procedure established by the Alabama Constitution of 1901. To support their contention, they cite Tayloe v. Davis, 212 Ala. 282,102 So. 433 (1924), in which this Court considered a challenge to the validity of a statute requiring that amendments to the budget bill be made by a two-thirds majority of both houses. This Court held that that statute violated the Alabama Constitution. The providers contend that § 10-4-115, like the statute in Tayloe, adds additional requirements for the passage of legislation not set forth in the Constitution. We disagree. Section 10-4-115 does not require a specific majority of the Legislature, as the statute involved in Tayloe did. Section10-4-115 merely requires that if the Legislature is intending to change the provisions of § 10-4-100, then the legislation that makes that change must explicitly show that intention; this requirement is consistent with the requirements of § 45 of the Constitution for providing notice of the purposes of an Act.
The providers also argue that these statutes violate Article IV, § 108, of the Alabama Constitution. That section provides:
 "The operation of a general law shall not be suspended for the benefit of any individual, private corporation, or association; nor shall any individual, private corporation or association be exempted from the operation of any general law except as in this article otherwise provided."
The providers contend that Blue Cross, although organized under the provisions of § 10-4-115, is an insurance company, and that that statute gives Blue Cross protection from legislation that affects other insurance companies, and this violates the Constitution. We cannot accept this argument.
Admittedly, Blue Cross, because it is organized under the provisions of § 10-4-100, is exempt from the operation of certain laws that regulate insurance companies, but the law does not afford Blue Cross any benefits that would not be provided to any other company organized under the provisions of § 10-4-100. We cannot hold that § 10-4-115 or § 27-1-4 violates Article IV, § 108, of the Alabama Constitution, because these sections apply not only to Blue Cross, but also to any other entity organized under the provisions of § 10-4-100.
Because we cannot hold that § 10-4-115 and § 27-1-4 violate the Alabama Constitution, the answer to the second question is in the negative.
QUESTIONS ANSWERED.
HOOPER, C.J., and SHORES, HOUSTON, COOK, and SEE, JJ., concur.
[1] "Section 10-4-100 [1994 repl. vol.] provides:
" 'Any nonstock corporations organized not for profit for the purpose of establishing, maintaining and operating a health care service plan under which health services are furnished to such of the public who become subscribers to such plan pursuant to contracts are authorized and shall be governed by the provisions of this article.'
[2] "Blue Cross informed the Court of this fact at oral argument.
[3] "In July 1996, the United States Census Bureau estimated Alabama's population at 4,273,084. See U.S. Bureau of the Census, Estimates of the Population of States: Annual TimeSeries, July 1, 1990 to July 1, 1996 (released December 30, 1996). . . ." *Page 298