424 So.2d 659 (1982)
Ex parte Robert Michael DeMENT and John Dowling Thomas.
(Re: STATE of Alabama v. Robert Michael DeMENT, alias and John Dowling Thomas, alias).
80-369.
Supreme Court of Alabama.
November 12, 1982.
*660 Joel L. Sogol of Sogol & Chandler and C. Delaine Mountain of Crownover & Mountain, Tuscaloosa, for petitioners.
Charles A. Graddick, Atty. Gen., and James F. Hampton of Hampton & McLain, Sp. Asst. Attys. Gen., for respondent.
PER CURIAM.
We granted the petition for certiorari to review the decision of the Court of Criminal Appeals, 424 So.2d 657, which held that the trial court erred in finding Act Number 520 of the 1976 Regular Session of the Alabama Legislature unconstitutional. We conclude that the Act at issue violates the clear mandate of section 105 of the Constitution of Alabama, 1906, and reverse.
The facts of the case are as follows:
Pursuant to a nighttime probable cause search warrant issued under Act Number 520, the residence of Robert Michael De-Ment (DeMent) was searched, seven grams of cocaine were found, and DeMent was arrested and charged with possession of cocaine. The trial court granted DeMent's motion to suppress the evidence, ruling that Act Number 520 was unconstitutional.
Act Number 520 provides:
Section 1. Whenever any search warrant is directed to any sheriff, or to any constable of a county, commanding him to search a person, place or vehicle in any circuit composed of one county and having not less than five nor more than seven circuit judges, where the affidavits state probable cause for believing that a violation of the laws of this state relative to narcotics or controlled substances has occurred or is occurring and that evidence of such violation may be found on such person, or in such place or vehicle, then such warrant may be executed at any time of the day or night and the magistrate issuing such warrant shall state that such warrant may be executed at any time of the day or night.
Section 2. The provisions of this act are severable. If any part of this act is declared invalid or unconstitutional, such declaration shall not affect the part which remains.
Section 3. All laws or parts of laws which conflict with this act are hereby repealed.
Section 4. This act shall become effective immediately upon its passage and approval by the Governor, or upon its otherwise becoming a law.
Section 15-5-8, Code 1975, provides the general state law regarding nighttime search warrants:
A search warrant must be executed in the daytime unless the affidavits state positively that the property is on the person or in the place to be searched, in which case it may be executed at any time of the day or night. The issuing judge or magistrate must state in the warrant, according to the character of the affidavits, whether it is to be executed by day or at any time of the day or night.
Code 1975, § 15-5-8.
If Act Number 520 had been passed after this court's decision in Peddycoart v. City of *661 Birmingham, 354 So.2d 808 (Ala.1978), there could be no doubt that it could not withstand a constitutional challenge. In Peddycoart, we held that, by Section 105 of the Constitution of Alabama, 1901, "the constitutional framers have prohibited the enactment of a local act when the subject is already subsumed by the general statute." (Peddycoart, 354 So.2d at 813.) However, with regard to legislation enacted before Peddycoart, we must apply the rules which were previously applied in similar cases.
In Gilmore v. Greene County Democratic Party Executive Committee, 435 F.2d 487 (5th Cir.1970), the court stated:
As all know, a state statute or state action which grants to some what it denies to others, violates the equal protection provisions of the federal constitution, unless the deprivation is suffered as the result of the state's placing persons into different classes, and such classification is a reasonable one.
435 F.2d at 491.
Our own cases have held that there must be a reasonable relationship between the classification used and the purpose of the statute, or the classification will be deemed arbitrary. E.g., Dearborn v. Johnson, 234 Ala. 84, 173 So. 864 (1937), noted in Peddycoart, 354 So.2d at 810. However, it has been stated that "[a] statutory discrimination between classes is held to be relevant to a permissive legislative purpose if any state of facts reasonably may be conceived to justify it." (Tyson v. Johns-Manville Sales Corporation, 399 So.2d 263 [Ala.1981], quoted with approval in Reese v. Rankin Fite Memorial Hospital, 403 So.2d 158 [Ala. 1981].)
In the case before us, we cannot conceive of any state of facts which would establish a reasonable relationship between the classification used in Act Number 520 and its purpose. The State of Alabama argues that the classification is similar to one of population, and that "the peculiar characteristics of counties such as Tuscaloosa County and the number of drug related crimes committed therein" reasonably relate the classification to the purpose of this Act, which presumably is to allow the execution of nighttime search warrants based on probable cause in drug cases in Tuscaloosa County. The State has mentioned specifically the presence of the University of Alabama campus in Tuscaloosa County, and the "transient" nature of a large segment of the population due to the presence of the student body, as examples of the "peculiar characteristics." However, the State points to no statistics showing that this segment of the population produces in Tuscaloosa County a more serious drug problem than exists in other Alabama counties. More importantly, there is no showing that the number of counties making up the judicial circuit or the number of judges sitting in said circuit is at all related to the purpose of the law. The particular classification used by Act Number 520 makes Montgomery County and Madison County, as well as Tuscaloosa County, subject to the Act.
We take judicial notice that these two counties also contain institutions of higher learning, but there is no evidence, or even a contention, that the presence of these institutions has caused an increased drug problem in Montgomery or Madison County. We must also note that Lee County, the home of Auburn University, is excluded from the application of Act 520, composing as it does a judicial circuit having fewer than the required minimum of five circuit judges. Jefferson and Mobile Counties are also excluded, having more than seven judges, although each contains several institutions of higher learning, one is a major port, and they are the most populous counties in the state, a fact that would presumably give them more cause than other counties to have drug problems. As this court has noted in Belcher v. McKinney, 333 So.2d 136 (Ala.1976), quoting Dixon v. State, 27 Ala.App. 64, 167 So. 340 (1936), "It is a fact known of all men who have reached their maturity and who have enjoyed the general experience common to mankind that populous centers are the central nurseries and hotbeds of crime...." Belcher v. McKinney, 333 So.2d at 139. We repeat, there appears to us to be no reasonable relationship *662 between the classification and the purpose of the statute.
The expectation of the people of Tuscaloosa, Montgomery and Madison Counties to be protected from unreasonable nighttime search and seizure equally with the people of the remainder of the state is a right which should not be lightly denied. While we do not reach the question of whether such legislation would be constitutional if applied to the entire state, we cannot allow it to stand as written, denying to the citizens of the three included counties a protection that is granted to the citizens of the remainder of the state as a matter of course under Code 1975, § 15-5-8.
REVERSED AND REMANDED.
FAULKNER, JONES, ALMON, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.
TORBERT, C.J., concurs specially.
TORBERT, Chief Justice (concurring specially).
I concur in the result, but emphasize that this opinion should not be taken as overruling Dixon v. State, 27 Ala.App. 64, 167 So. 340, cert. denied, 232 Ala. 150, 167 So. 349 (1936).