This case concerns the constitutionality of Act No. 98-312, Ala. Acts 1998. That Act was a local act annexing certain territory from the police jurisdiction of the Town of Brilliant into the City of Winfield. Brilliant sued for a judgment declaring that Act No. 98-312 is void as repugnant to the law of Alabama and is unconstitutional on the basis that proper notice of *Page 1194 
the substance of the Act was not given; that the subject of the Act has been subsumed by a general law; that the Act includes more than one subject; and that the Act violates the procedural requirements of Ala. Code 1975, § 11-42-6. The trial court entered a summary judgment for Winfield. We affirm in part and reverse in part.
The Act consists of five sections. Section One pertained to the alteration of the Winfield corporate limits and provided a metes-and-bounds description of the territory to be annexed. Section Two provided that the annexation would not extend the police jurisdiction of Winfield as it existed before the annexation. Section Three provided that, in accordance with §11-42-6(b), a map showing the territory to be annexed would be available in the probate office of Marion County. Section Four provided that all laws conflicting with the Act were repealed. Section Five made the Act effective immediately upon its passage and approval by the Governor.
 Discussion I. Section 106 of the Alabama Constitution of 1901
Brilliant argues that the passage of Act No. 98-312 violates §106 of the Alabama Constitution of 1901, as amended by Amendment No. 341, because, it argues, proper notice of the substance of the Act was not given. Section 106, as amended, provides:
 "No special, private, or local law shall be passed on any subject not enumerated in section 104 of this Constitution, except in reference to fixing the time of holding courts, unless notice of the intention to apply therefor shall have been published, without cost to the state, in the county or counties where the matter or thing to be affected may be situated, which notice shall state the substance of the proposed law and be published at least once a week for four consecutive weeks in some newspaper published in such county or counties or if there is no newspaper published therein, then by posting the said notice for two consecutive weeks at five different places in the county or counties prior to the introduction of the bill; and proof that said notice has been given shall be exhibited to each house of the legislature through a certification by the clerk of the house or secretary of the senate that notice and proof was attached to the subject local legislation and the notice and proof shall be attached to the original copy of the subject bill and shall be filed in the department of archives and history where it shall constitute a public record. The courts shall pronounce void every special, private, or local law which the journals do not affirmatively show was passed in accordance with the provisions of this section."
(Emphasis added.) Brilliant claims that the substance of the Act was not properly noticed because of what it says was a material variance between the Act as noticed and as passed.
The variance to which Brilliant refers consists of two typographical errors in the description of the land to be annexed. The notice published in the newspaper did not contain the typographical errors, so the public received the correct information. However, the Act as passed contains two errors. It is important to note that the land description in § 1 of Act No. 98-312 consists of eight paragraphs and that seven of the eight paragraphs include the following description, in almost identical language (taken here from the third paragraph of description):
 "Commence at the S.E. corner of the S.W. 1/4 of the N.W. 1/4 of Section 26, Township 12 South, Range 12 West; thence run N 89 degrees 53' 46" W along the South line thereof. . . ."
The first error was in the fifth paragraph of the land description in § 1 of the Act, wherein the township is designated as Township 15 rather than Township 12. However, further into the sentence, the proper township — Township 12 — is referred to. The fifth paragraph begins as follows: *Page 1195 
 Also, a parcel of land located in the W 1/2 of the N.W. 1/4 of Section 26, Township 15 South, Range 12 West, more particularly described as follows: Commence at the S.E. corner of the S.W. 1/4 of the N.W. 1/4 of Section 26, Township 12 South, Range 12 West. . . ."
(Emphasis added.) The number "15" is obviously a typographical error, and the proper township is easy to identify, especially because Township 12 is mentioned 14 times throughout the land description. In contrast, the reference to Township 15 appears only once.
The second error occurs in the seventh paragraph of the land description and causes an angle to be incorrectly designated as an angle of 9 degrees instead of 89 degrees. The seventh paragraph begins as follows:
 "Also, begin at the S.E. corner of the S.W. 1/4 of the N.W. 1/4 of Section 26, Township 12 South, Range 12 West, Marion County, Alabama; thence run N 9 degrees 53' 46" W., along the South line thereof. . . ."
(Emphasis added.) The language "along the South line thereof" suggests an error in the degree designation, because it is not possible to run "North 9 degrees West" and be running along the south line. Further, the proper angle — "North 89 degrees 53 minutes 46 seconds West along the South line" — is used six times throughout the land description. Anyone reading this description to ascertain the territory to be annexed would be able to determine that the reference to "9 degrees" was a typographical error.
This Court has held many times that "substantial accuracy, not perfection, is all that is required in an annexation description." City of Birmingham v. Smith, 507 So.2d 1312, 1323
(Ala. 1987); see City of Birmingham v. Mead Corp., 372 So.2d 825, 827 (Ala. 1979); State v. City of Birmingham, 167 Ala. 651,52 So. 461 (1910). In Foshee v. Kay, 197 Ala. 157, 72 So. 391
(1916), this Court held that the incorporation of a municipality was not invalid merely because the territory being annexed had been erroneously described in the margin of the plat as being in Township 20 instead of Township 21. Instead, the error was considered corrected because the plat itself showed the accurate Township. In this present case, we conclude that the description of the territory to be annexed was substantially accurate.
The purposes of the notice requirement in § 106 are: 1) "to inform all persons affected by the [proposed] local law," so they have the "opportunity to voice their opposition"; 2) "to prevent deception of persons immediately affected" by the proposed law; and 3) to avert a fraud on the public by preventing the community from being misled about the purpose of the law. Deputy SheriffsLaw Enforcement Ass'n v. Mobile County, 590 So.2d 239, 241 (Ala. 1991). These objectives were not thwarted by the variance between the Act as noticed and the Act as passed. In fact, because the notice contained the proper land description, without the typographical errors, there can be no question that the persons affected by the law were informed of its substance before the Act was passed. Therefore, we conclude that the typographical errors did not render Act No. 98-312 invalid under § 106 of the Alabama Constitution of 1901.
 II. Section 11-42-6, Ala. Code 1975 A. As applied to § 106, Alabama Constitution of 1901
Brilliant further argues that § 106 of the Constitution was violated because, it says, the requirements of Ala. Code 1975, §11-42-6, as referenced within Act No. 98-312, were not followed. This problem arose because House Bill 796, the bill that became Act No. 98-312, had no map attached to show the corporate boundaries of the City of Winfield as they existed before the adoption of H.B. 796. Ala. Code 1975, § 11-42-6 provides:
 "(a) Any bill introduced in the legislature which attempts to annex territory to any municipality or to otherwise *Page 1196 
change the boundary lines of any municipality shall contain an accurate description of the territory proposed to be annexed to or removed from such municipality together with a plat or map of such territory attached; showing its relationship to the corporate limits of the municipality to which such territory is proposed to be annexed. Copies of such map shall also be furnished to the judge of probate for the county or counties wherein the territory proposed to be annexed to or removed from the municipality is located.
 "(b) The publication of notice of intention to apply for any local law annexing territory to any municipality or otherwise changing the boundary lines of any municipality shall, in addition to all other requirements provided by law, state that a map showing what territory is to be annexed
to or removed from such municipality is on file in the office of the judge of probate in the county or counties wherein such territory is located and that such map is open to the inspection of the public."
(Emphasis added.)
The map attached to the bill passed by the Legislature, and on file in the probate office, merely showed the territory to be annexed; it did not indicate where the corporate limits of Winfield were in relation to that territory. Winfield argues that the public had constructive knowledge of the "relationship" between that territory and the corporate limits of the annexing municipality because the map shows the precise location of the territory to be annexed and the public had constructive notice of the location of the annexing city. However, in City of Birminghamv. Bouldin, 280 Ala. 76, 190 So.2d 271 (1966), this Court held that mandatory notice requirements could not be avoided simply because people had gained knowledge of the proposed act through publicity and notoriety.
Nevertheless, this Court has also held that the Legislature has plenary power with regard to municipalities and is limited only by the Alabama Constitution. Town of Vance v. City ofTuscaloosa, 661 So.2d 739, 742 (Ala. 1995). Section 106 of the Constitution, as amended by Amendment No. 341, requires that notice stating "the substance of the proposed [local] law . . . be published at least once a week for four consecutive weeks in some newspaper published in [the] county." Act 98-312 was published verbatim, except for the two typographical errors discussed above, for four consecutive weeks in a newspaper published in Marion County; that satisfied the requirements of § 106. The noncompliance with § 11-42-6(a) does not invalidate the Act under § 106, which does not require a map showing the relationship of the annexing municipality to the territory to be annexed be attached to the bill.
 B. Procedural Requirements
Brilliant also contends that because the Act violates the procedure called for by § 11-42-6, Ala. Code 1975, and because the Legislature adopted this procedure within the Act itself, the Legislature's failure to follow that procedure renders the Act invalid. This Court has held that a "specific reference statute is one `where the adopting statute incorporates an earlier statute or a particular provision thereof by a specific and descriptive reference thereto,' e.g. by employing a statutory citation or the specific title to an act." Shelby County Comm'n v. Smith,372 So.2d 1092, 1094 (Ala. 1979), citing Carruba v. Meeks, 274 Ala. 714,150 So.2d 195 (1963). (Emphasis added.) In this case, the Legislature included a specific reference to § 11-42-6(b) — a subsection — rather than a reference to the entire Code section. The Legislature incorporated the provisions of § 11-42-6(b), but we conclude that it was not bound to follow the procedures set forth in § 11-42-6(a), including the provision requiring the attachment of a map showing the "relationship" of the annexed territory to the annexing municipality.
The Legislature has the power to determine the rules of its proceedings. Section 53, Alabama Constitution of 1901. Because the Legislature is limited only by *Page 1197 
the provisions of the Constitution, "[c]ourts cannot look to the wisdom or folly, the advantages or disadvantages, of the rules which a legislative body adopts to govern its own proceedings." Opinion of the JusticesNo. 265, 381 So.2d 183, 185 (Ala. 1980). In that opinion, the Justices of this Court examined a joint resolution of the Senate and House of Representatives that was intended to alter certain procedures in §41-20-10, Ala. Code 1975. The procedures in § 41-20-10 dealt with debate and voting in the Legislature regarding recommendations as to continuing or terminating state agencies. The majority of the Justices expressed the opinion that the joint resolution was essentially an amendment of §41-20-10. They further expressed the opinion that the amendment process must comply with the same constitutional formalities as were necessary for the original enactment of the statute; therefore, they concluded, under § 61 of the Alabama Constitution of 1901 the law could be amended only by the passage of a bill.
Justice Maddox expressed a separate opinion when the Justices issued Opinion No. 265. He expressed the opinion that § 41-20-10
was a rule of procedure that could not bind the present Legislature:
 "I realize that prior Legislatures have passed many statutes which contain procedural provisions, which purport to govern legislative procedures. When a succeeding Legislature follows any procedural rules provided for by statute, without objection, the Legislature, by its very action, is adopting the statutory procedure, and no problem is created. When a succeeding Legislature, however, does not wish to adopt a statutory procedure which has been established by a previous Legislature, as is the case here, I believe that the Legislature can change that procedure without adopting a Bill."
381 So.2d at 187 (emphasis omitted). In his special writing, Justice Maddox discussed the case of Tayloe v. Davis, 212 Ala. 282,102 So. 433 (1924), as authority for the proposition that "a rule of procedure . . .`expires with the Legislature adopting it, unless readopted by future Legislatures.'" 381 So.2d at 186. By that proposition, the Legislature can choose to adopt or to ignore rules of procedure established by prior Legislatures. In Tayloe, this Court addressed the constitutionality of an act of the Legislature creating a state budget commission. The case involved whether § 6 of the act, which required a two-thirds vote to alter or amend a budget bill, was void. The Court held that because the Alabama Constitution specifies the vote required on special matters (e.g., a unanimous vote to extend the privileges of the floor, a two-thirds vote to expel a member, etc.), only a majority vote is required for all other legislative business. Therefore, § 6 of the Act, insofar as it required a two-thirds vote, was void. This Court went on to state that this was a rule of procedure incorporated into the statute, and that future Legislatures were invited, though not bound, to readopt and to adhere to it. In discussing whether § 6 could be severed from the Act, this Court held that because § 6 was a rule of procedure it expired with the Legislature adopting it, unless readopted by future Legislatures. Therefore, the section "severs itself by the nature of it." Tayloe, 212 Ala. at 286, 102 So. at 436.
The Court of Criminal Appeals has addressed a similar issue. In Newton v. State, 375 So.2d 1245 (Ala.Crim.App. 1979), the defendant argued that no valid warrant had been issued for a search that resulted in the seizure of marijuana in his possession, because, he argued, Act No. 551, Ala. Acts 1977, which addressed the powers of district-court magistrates in Tuscaloosa County, was invalid. Act No. 551 purported to amend §12-17-251(c)(1), Ala. Code 1975, as applied to Tuscaloosa County, by permitting search warrants to be issued in Tuscaloosa County by persons not licensed to practice law. The defendant claimed that Act 551 had been enacted in violation of § 12-1-6, Ala. Code 1975, which prescribes a procedure for the passage of local bills pertaining to the judiciary. *Page 1198 
Section 12-1-6 was a codification of § 6-117 of Act No. 1205, Ala. Acts 1975, the statute that implemented the new Judicial Article of the Alabama Constitution (Ala. Const. 1901, Amend. No. 328). The Court of Criminal Appeals found that Act 551 was not, and did not purport to be, a part of the new Judicial Article; therefore, it said, any violation of §12-1-6 that occurred in the enactment of Act No. 551 did not invalidate the Act. The Court of Criminal Appeals followed the well-established law that "[t]he limitations upon the power of the Legislature are confined to those expressed or implied by either the Constitution of the United States or the Constitution of Alabama." 375 So.2d at 1248, citing Ex parte Foshee, 246 Ala. 604,21 So.2d 827 (1945); Trailway Oil Co. v. City of Mobile,271 Ala. 218, 122 So.2d 757 (1960). The Court of Criminal Appeals inNewton quoted from 82 C.J.S. Statutes § 9 (1953):
 "One legislature cannot bind a succeeding legislature or restrict or limit the power of its successors to enact legislation, except as to valid contracts entered into by it, and as to rights which have actually vested under its acts, and no action by one branch of the legislature can bind a subsequent session of the same branch. Nevertheless during sessions legislative bodies may do and undo, consider and reconsider, as often as they think proper, as only the final result will be regarded as the thing done, and a legislature, in the anticipation of a probable future condition, may provide legal rules to apply thereto."
See 375 So.2d at 1248.
Section 11-42-6 is a rule of procedure for the passage of annexation bills; it was enacted by the 1986 Legislature. By referencing and following § 11-42-6(b), the 1998 Legislature, in Act No. 98-312, thereby adopted the procedures set forth in §11-42-6(b). The requirements of § 11-42-6(b) were fulfilled in the adoption of Act No. 98-312, because the publication of notice indicated that a map showing the territory to be annexed was on file in the probate office.
 "Rules controlling legislative procedure are usually formulated or adopted by legislative bodies themselves, and the observance of such rules is a matter that is entirely subject to legislative control and discretion, and is not subject to review by the courts. However, a legislature may not adopt rules for the passage of statutes which conflict with the provisions of the constitution. The nonobservance of joint rules of the legislature will not render the statute invalid. Under these principles, rules of procedure passed by one legislative body are not binding upon subsequent legislative bodies operating within the same jurisdiction."
73 Am. Jur. 2d Statutes § 49 (1974). Because the power of the Legislature in the passage of bills is confined only by the United States Constitution and the Alabama Constitution, the 1998 Legislature was not bound by the provisions of § 11-42-6(a). Therefore, Act No. 98-312 is not invalidated by the failure of the Legislature to comply with those provisions.
 III. Section 105, Alabama Constitution of 1901 A. Section 2 of Act 98-312
Brilliant next contends that Act No. 98-312 violates § 105 of the Alabama Constitution of 1901. Brilliant argues that Act No. 98-312 is a local act dealing with a subject that has been subsumed by a general law. Section 105 provides:
 "No special, private, or local law, except a law fixing the time of holding courts, shall be enacted in any case which is provided for by a general law, or when the relief sought can be given by any court of this state; and the courts, and not the legislature, shall judge as to whether the matter of said law is provided for by a general law, and to whether the relief sought can be given by any court; nor shall the legislature indirectly enact any such special, private, or local law by the partial repeal of a general law." *Page 1199 
As provided in § 110 of the Alabama Constitution of 1901, a "general law" is one that applies to the whole State, while a "local law" is one that applies to "any political subdivision or subdivisions of the state less than the whole." Brilliant argues that, because the police jurisdiction of municipalities is provided for by a general law, Act No. 98-312, a local law, is unconstitutional as an attempt to alter the police jurisdiction of the City of Winfield. The general law, Ala. Code 1975, §11-40-10, provides in pertinent part:
 "The police jurisdiction in cities having 6,000 or more inhabitants shall cover all adjoining territory within three miles of the corporate limits, and in cities having less than 6,000 inhabitants and in towns, such police jurisdiction shall extend also to the adjoining territory within a mile and a half of the corporate limits of such city or town."
In contrast, Act No. 98-312 provides that the extension of the corporate limits of Winfield by that Act shall not extend the police jurisdiction as it existed before the adoption of the Act.
Winfield responds with the argument that § 11-40-10 is not the only general law relating to police jurisdiction, and that the Act accords with the general rules regarding overlapping police jurisdictions expressed in § 11-40-10 and § 11-42-21. Section11-42-21 provides in pertinent part:
 "[I]n the event any such incorporated municipality's police jurisdiction overlaps with the police jurisdiction of one or more other incorporated municipalities, the governing body of each such incorporated municipality may exercise the authority of this article, in such overlapping portions of their police jurisdiction, to a boundary which is equidistant from the respective corporate limits of each of such incorporated municipalities which have overlapping police jurisdictions. . . ."
However, § 11-42-21 would not apply in this case, because it is the Legislature designating the boundary of Winfield's police jurisdiction, not the respective municipalities.
Winfield further argues that § 2 of Act No. 98-312 could be interpreted as a manifestation of a legislative intent that Winfield's police jurisdiction after the annexation should conform to the same general law that governed the police jurisdiction before the Act was adopted, namely § 11-40-10. Winfield argues that if two interpretations can be given to a statute, one rendering it valid and one rendering it unconstitutional, then a court should adopt the interpretation that would uphold the law.House v. Cullman County, 593 So.2d 69, 71-72 (Ala. 1992). However, we think that if the Legislature had meant for the Winfield police jurisdiction after the annexation to conform to the same general laws that had governed the police jurisdiction before the enactment, it either would have said so or would have simply said nothing about the police jurisdiction. Obviously, the general law will apply if no exception is created. The Legislature would not have included a separate section in the Act stating that the police jurisdiction would not be extended, if it had meant for the general law to apply. The inclusion of this section in the Act provides an exception to the general law regarding police jurisdictions, rather than stating that the police jurisdiction should conform to the general law.
"The subject of a local law is deemed to be `subsumed' in a general law if the effect of the local law is to create a variance from the provisions of the general law." Opinion of the JusticesNo. 342, 630 So.2d 444, 446 (Ala. 1994), citing Crandall v. Cityof Birmingham, 442 So.2d 77, 80 (Ala. 1983). Because § 2 of Act No. 98-312 creates a variance from the provisions of § 11-40-10, we conclude that § 2 violates § 106 of the Alabama Constitution of 1901. However, the entire Act is not made unconstitutional simply by the fact that one provision of it is invalid, even though the Act does not contain a severability clause. "If a portion of a legislative enactment is *Page 1200 
determined to be unconstitutional but the remainder is found to be enforceable without it, a court may strike the offending portion and leave the remainder intact and in force." City of Birmingham v. Smith, 507 So.2d 1312, 1315 (Ala. 1987). We conclude that that principle of Smith applies in regard to § 2 of the Act.
 B. Section 4 of Act No. 98-312
Brilliant further argues that § 4 of Act No. 98-312, stating that "[a]ll laws or parts of laws which conflict with this act are repealed," violates § 105 because, Brilliant argues, the Legislature attempted, by enacting § 4, to repeal, in whole or in part, § 11-42-6 and § 11-40-10, both of which it says conflict with Act No. 98-312. We see nothing in § 4 evidencing an intent to repeal § 11-42-6 or § 11-40-10. As we have previously discussed, the Legislature is not bound by § 11-42-6, because that Code section states a procedural rule adopted by a previous Legislature. While § 2 does conflict with § 11-40-10, we have already determined that § 2 is unconstitutional and should be stricken from the Act. Brilliant has not shown that § 4 of Act No. 98-312 violates § 105 of the Alabama Constitution of 1901.
 IV. Section 45, Alabama Constitution of 1901
Brilliant also contends that the Act violates § 45 of the Alabama Constitution of 1901 by containing more than one subject. Section 45 provides (with exceptions not applicable here) that "[e]ach law shall contain but one subject, which shall be clearly expressed in its title." The title of Act No. 98-312 states that the subject matter is the altering, rearranging, and extending the corporate limits of the City of Winfield. Section 1 of Act No. 98-312 deals with altering, rearranging, and extending the corporate limits; however, § 2 addresses the police jurisdiction of Winfield. Brilliant argues that these are two distinct subjects.
Winfield contends that police jurisdiction is "cognate of" (i.e., is related to or is descended from) the subject of corporate limits; therefore, it argues, the Act contains only one subject. We agree. "The title of a bill need not specify every provision contained. The `one subject' test of § 45 is satisfied when the bill's provisions are all referable to and cognate of the subject of the bill." Opinion of the Justices No. 215, 294 Ala. 555,564, 319 So.2d 682, 692 (1975).
In State ex rel. City of Birmingham v. City of Tarrant City,294 Ala. 304, 315 So.2d 583 (1975), this Court stated that the Legislature had defined the term "police jurisdiction" as it appeared in Title 37, § 9, Ala. Code 1940; the provisions of that section now appear in Ala. Code 1975, § 11-42-10. That definition is stated in terms of distance from a municipality's "corporate limits." Therefore, in that case, for purposes of determining whether certain municipal annexations complied with a statute that related to annexation of land not within any other municipality's "police jurisdiction," this Court defined "police jurisdiction" in terms of distance from the corporate limits of a municipality. Obviously, "corporate limits" and "police jurisdiction" are not the same thing. See City of Dothan v. Dale County Comm'n,295 Ala. 131, 134, 324 So.2d 772, 775 (1975), stating: "It is self-evident that there is a clear distinction between `corporate limits' and `police jurisdiction.'" However, City of Dothan did not concern the issue now before us, and we think these subjects — corporate limits and police jurisdiction — are so related that the inclusion of both subjects in one act would not violate § 45. Section 45 is intended to provide "notification to the public of the nature of the [pending] legislation" and to avoid the "inadvertent passage of provisions not related to the title."Opinion of the Justices No. 215, supra, 294 Ala. 555, 564,319 So.2d 682, 691-92. "`The title need not be an index or catalog of every power bestowed in the act, nor of every effect of the act.'" Shelby County Comm'n v. Smith, supra, 372 So.2d at, *Page 1201 
1095, quoting Lane v. Gurley Oil Co., 341 So.2d 712, 715 (Ala. 1977).
However, because the Legislature, as we have stated in the previous discussion, has chosen to provide a general law regarding police jurisdiction in § 11-42-10, we must hold that § 2 of Act No. 98-312 violates § 105 of the Alabama Constitution of 1901, which prohibits legislation through a local act on a subject that has been subsumed by a general law. Therefore, as discussed above, § 2 should be stricken from the Act.
 V. Admissibility of Affidavit Offered in Support of Motion for Summary Judgment
Because we have considered the issue whether the annexation description was substantially accurate, we do not address Brilliant's final argument that the court erred in permitting Winfield to offer an affidavit of a land surveyor stating that the variances in the description were not of substantial importance. Brilliant contends that the court erred in refusing to strike the affidavit because, Brilliant says, the affidavit states an opinion regarding a legal conclusion. However, even if the trial court did err, that fact would not change the disposition of this case, because this Court has determined the legal effect of the variances in the description of the land to be annexed.
 Conclusion
A legislative act enjoys a presumption of validity. AlabamaState Fed'n of Labor v. McAdory, 246 Ala. 1, 9, 18 So.2d 810, 815
(1944). For the Court to strike down an act of the Legislature, it must be "clear beyond reasonable doubt that it is violative of the fundamental law" — i.e., that it violates a limitation on legislative power imposed by the State or Federal Constitution.246 Ala. at 9, 18 So.2d at 815. The plenary power of the Legislature is limited by the Alabama Constitution. Section 2 of Act No. 98-312 violates § 105 of the Constitution of Alabama of 1901 because it legislates through local law on a subject that has been subsumed by a general law. Therefore, we hold that § 2 should be stricken, with the remainder of the Act left intact.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Maddox, Houston, Cook, See, Brown, Johnstone, and England, JJ., concur.